SARAH KROLL-ROSENBAUM (SBN 272358)
skroll-rosenbaum@constangy.com
MATTHEW SCHOLL (SBN 301560)
mscholl@constangy.com
NANCY SOTOMAYOR (SBN 312022)
nsotomayor@constangy.com
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
2029 Century Park East, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 909-7775
Facsimile: (424) 465-6630

Attorneys for Defendant
AMN SERVICES, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA WOEHRLE, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMN SERVICES, LLC a California Limited Liability Company; PROVIDENCE HEALTH SYSTEM-SOUTHERN CALIFORNIA, a California Corporation; an individual, and DOES 1-20 inclusive,<br><br>Defendants. | Case No. 2:19-cv-05282<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA; DECLARATIONS OF LISA LARSON AND SARAH KROLL-ROSENBAUM IN SUPPORT THEREOF**<br><br>**[Class Action Fairness Act of 2005]**<br><br>(Los Angeles Superior Court Case No. 19STCV15213)<br><br>Complaint Filed: May 2, 2019 |

1
NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant AMN Services, LLC ("AMN") hereby removes the above-referenced action from the Superior Court of the State of California for the County of Los Angeles, to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 asserting original federal jurisdiction under 28 U.S.C. § 1332(d).  In support of this removal, AMN states as follows:

1.      On May 2, 2019, Plaintiff Sara Woehrle ("Plaintiff") commenced an action against AMN and Providence Health System-Southern California ("Providence") in Los Angeles Superior Court asserting, on behalf of herself and various putative classes consisting of non-exempt employees of AMN who have worked in California since May 2, 2015, eight causes of action for (1) failure to provide reporting time pay; (2) failure to pay for all hours worked; (3) failure to pay overtime; (4) failure to pay minimum wages; (5) failure to authorize or permit meal breaks; (6) failure to furnish accurate wage statements; (7) waiting time penalties; and (8) unfair business practices.  (Declaration of Sarah Kroll-Rosenbaum ("Kroll-Rosenbaum Decl.") ¶ 2, Ex. A ("Complaint").)

2.      The Complaint was served on AMN on June 7, 2019. (*Id*., ¶ 2.)  As of the filing of this Removal, AMN has not yet responded to the Complaint.  (*Id*., ¶ 4.)

3.      In compliance with 28 U.S.C. § 1446(a), true and correct copies of all state court "process, pleadings, and orders" are attached as Exhibits A through C to the Declaration of Sarah Kroll-Rosenbaum.

4.      This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of Los Angeles, as required by 28 U.S.C. § 1446(d).

NOTICE OF REMOVAL

5. The Complaint does not allege an amount in controversy, an estimated number of putative class members, or other facts from which it can be ascertained from the face of the pleadings that the case is one which is removable. (*See*, Complaint.) However, AMN has conducted its own investigation and review of its employment records. (Declaration of Lisa Larson ("Larson Decl.") ¶¶ 6-9.) Based on this review, this action is properly removable under the Class Action Fairness Act because the statute's diversity, numerosity, and amount in controversy requirements are met. Accordingly, this removal is appropriate and timely under 28 U.S.C. § 1446(b). *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) ("We conclude that §§ 1441 and 1446, read together, permit a defendant to remove [a CAFA action] . . . on the basis of its own information . . . A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained . . . [b]ut neither should a plaintiff be able to prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on its own.")

6. Further, this Notice of Removal is timely filed within 30 days of the date of service. 28 U.S.C. § 1446(b).

## **JURISDICTION**

7. This Court has original jurisdiction over this action under the Class Action Fairness Act ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d)(2), because this action is a class action in which the number of class members is greater than 100, at least one class member is a citizen of a state different from that of Defendants, and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs, and fewer than one-third of the members of the putative classes, in aggregate, are citizens of California. 28 U.S.C. §§ 1332(d)(2), (d)(5), and (d)(6). This action is therefore properly removable pursuant to 28 U.S.C. § 1441(a).

NOTICE OF REMOVAL

8.    **<u>The Putative Class</u>**.  Plaintiff purports to bring the causes of action alleged in the Complaint on behalf of four classes implicating various compositions of "non-exempt employees of AMN who worked inside California during the Class Period," which is defined as "any time from four years period prior [sic] to the filing of this Complaint."  (Compl., ¶¶ 33-39.)[1]

9.    AMN provides short-term staffing solutions to healthcare facilities across the country by locating and placing qualified healthcare professionals for assignments of various lengths.  (Larson Decl., ¶ .)  These healthcare professionals that worked in California since May 2, 2015 make up the putative classes in this case.

10.    The standard length of an AMN assignment in California is 13 weeks, though the actual length may range from a few weeks to over a year.  (*Id*., ¶ 5.) The majority of healthcare professionals employed in California contract with AMN to work three 12-hour shifts per week during their assignments.  (*Id*.)

11.    AMN's records indicate that during the four years prior to the filing of the Complaint (i.e., May 2, 2015) through the filing of the Complaint (i.e., May, 2019), AMN employed approximately 13,164 non-exempt healthcare professionals in California.    (Larson Decl., ¶ 6.)    These healthcare professionals worked

---

[1]Two of these classes—the "Unpaid Time Class" (Compl., ¶ 36) and the "Meal Break Class" (Compl., ¶ 38)—are broadly alleged to include all of AMN's non-exempt employees in California who were allegedly not paid for all hours worked or who were not provided with lawful meal breaks, respectively.  As alleged, these proposed classes could implicate all of AMN's non-exempt healthcare professionals who worked in California during the class period.  Accordingly, AMN assumes for the purposes of this removal that these putative classes do consist of all of AMN's non-exempt healthcare professionals that worked in California during the class period.

Plaintiff additionally proposes two more nuanced classes–the "Reporting Pay Class" consisting only of AMN's non-exempt employees who worked at a Providence facility in California during the class period (Compl., ¶ 35) and the "Per Diem Class" consisting only of AMN's non-exempt employees who worked in California and received per diem benefits that "were adjusted based on hours and/or shifts worked" (Compl., ¶ 37).  As set forth below in paragraphs 29 and 30, AMN assumes for the purposes of this Removal that the amount in controversy as to the claims associated with the "Reporting Pay Class" and "Per Diem Class" to be $0, so it does not attempt to estimate the sizes of these classes here.

4

NOTICE OF REMOVAL

approximately 27,802 assignments and 399,253 workweeks during this same period. (*Id.*)   They received an average straight-time rate of $28.45 per hour, and an average overtime rate of $42.68 per hour. (*Id.*)

12.   During the one year prior to the filing of the Complaint (i.e., May 2, 2018) through the filing of the Complaint, AMN employed approximately 5,338 non-exempt healthcare professionals in California—these healthcare professionals were paid on a weekly basis and received approximately 132,881 wage statements for a corresponding number of pay periods during this time period. (*Id.*, ¶ 8.)

13.   **Numerosity.**  CAFA jurisdiction does not attach where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5)(B).  The Complaint alleges that the members of the putative classes "are so numerous that their individual joinder is impracticable." (Compl., ¶ 40.)  As set forth above, AMN's records show that approximately 13,164 putative class members worked for AMN in California during the four years prior to the filing of the Complaint. (Larson Decl., ¶ 6.)  Accordingly, CAFA's numerosity requirement is met.

14.   **Diversity**.  Plaintiff alleges that "[a]t all relevant times mentioned herein, Plaintiff was … a resident of the State of Georgia." (Compl., ¶ 6.)  Further, during her employment with AMN, Plaintiff completed a "Tax Residence Declaration," in which she attested that she would maintain a permanent tax home in Georgia while working for AMN in California. (Larson Decl., ¶ 4.)  Accordingly, Plaintiff is a citizen of Georgia.

15.   AMN was at the time of the filing of this action, and still is, a limited liability company organized under the laws of the State of North Carolina, having its principal place of business headquartered in the State of California. (Larson Decl., ¶ 2.)

16.   AMN is wholly owned by AMN Healthcare, Inc., which is a corporation organized under the laws of the State of Nevada with its principal

5

place of business headquartered in the State of California.  (Larson Decl., ¶¶ 2-3.) "A corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1184 (2010) (holding "'principal place of business' [as contained in section 1332(c)] is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities.")  Thus, AMN Healthcare, Inc. is a citizen of California and Nevada.

17.    For the purposes of diversity under 28 U.S.C. § 1332, "LLCs have the citizenship of all of their owners/members."  *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 902 (9th Cir. 2006).  Because AMN is an LLC wholly-owed by AMN Healthcare, Inc., which is a citizen of California and Nevada, AMN is also a citizen of California and Nevada.

18.    The Complaint alleges that Defendant Providence is a California corporation.  (Compl., ¶ 7.)  Thus, AMN assumes for the purposes of this Removal that Providence is a citizen of California.

19.    The Complaint also names as defendants "DOES 1-20."  (Compl., ¶ 9.)  Does 1 to 20 are fictitious defendants who are not parties to this action, are not required to join in a removal petition, and must be disregarded for removal purposes.  *See* 28 U.S.C. §§ 1441(a) and 1447(e); *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes"); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (same).

20.    As Plaintiff is a citizen of Georgia, Defendant AMN is a citizen of California and Nevada, and Defendant Providence is a citizen of California, CAFA's minimal diversity requirement is satisfied.  28 U.S.C. § 1332(d)(2) ("The district courts shall have original jurisdiction of any civil action in which … (A)

any member of a class of plaintiffs is a citizen of a State different from any defendant."

21.     Plaintiff also brings this action on behalf of all individuals that worked for AMN in California as non-exempt employees during the four years prior to the filing of the Complaint.  (Compl., ¶¶ 33-39.)  Of the 13,164 putative class members, 10,208 reported to AMN that they maintained a permanent residence outside of California as of their most recent assignment for AMN and 2,956 reported that they maintained a permanent residence in California as of their most recent assignment. (Larson Decl., ¶ 7.)  Thus, only approximately 22.46% of the members of the putative classes are citizens of California.  (*Id.*)  Accordingly, even though both AMN and Providence are citizens of California, neither the "home state" nor "local controversy" exceptions to CAFA apply because over two-thirds of "the members of all proposed plaintiff classes in the aggregate" are not citizens of California.  *See* 28 U.S.C. § 1332(d)(4)(A)-(B).

22.     **Amount in Controversy.** Under CAFA, "the claims of the individual class members shall be aggregated to determine whether amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest or costs."  28 U.S.C. § 1332(d)(6).  Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. REP. 109-14, at 42.  Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class action in state or federal court should be resolved in favor of federal jurisdiction.  S. REP. 109-14, at 42 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case . . . . Overall, new

7

NOTICE OF REMOVAL

section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendants.") Because there is a presumption in favor or removal, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014).

23.    Where, as here, the Complaint does not specify the amount of damages sought, the "removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 682-83 (9th Cir. 2006) (*citing Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992)).   Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met.  *Coleman v. Estes Express Lines Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *citing Korn v. Polo Ralph Lauren, Inc.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n. 3 (9th Cir. 2000).

24.    Plaintiff alleges eight causes of action in the Complaint for (1) failure to provide reporting time pay (Compl., ¶¶ 45-48); (2) failure to pay for all hours worked (*Id*., ¶¶ 49-54); (3) failure to pay overtime (*Id*., ¶¶ 55-61); (4) failure to pay minimum wages (*Id*., ¶¶ 62-67); (5) failure to authorize or permit meal breaks (*Id*., ¶¶ 68-74); (6) failure to furnish accurate wage statements (*Id*., ¶¶ 75-79); (7) waiting time penalties (*Id*., ¶¶ 71(ii)-75(ii))[2]; and (8) unfair business practices (*Id*., ¶¶ 76(ii)-81). Plaintiff seeks, among other things, compensatory damages, restitution of unpaid wages, statutory remedies, declaratory and injunctive relief,

---

[2] After paragraph 79, the numbering in the Complaint reverts back to 71, meaning that there are two paragraphs numbered 71, two paragraphs numbered 72, etc. This removal uses the designation "(ii)" when referencing the second of the duplicative numbered paragraphs.

NOTICE OF REMOVAL

pre-judgment and post-judgment interest, attorneys' fees, and costs. (*Id.*, pp. 21-22 ("Prayer for Relief").)

25.     AMN denies that Plaintiff is entitled to take anything by way of the Complaint, either on her own behalf or on behalf of the putative classes. Nevertheless, the amount in controversy is dictated by the extent of Plaintiff's claims, not their merits. *See Roth v. Comerica Bank.*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010) ("The ultimate inquiry is what amount is 'put in controversy' by the plaintiff's complaint, not what a defendant will actually owe.") *quoting Korn, supra*, 536 F. Supp. 2d at 1205.

26.     Although AMN denies all liability, a review of AMN's employment records shows that the alleged amount in controversy herein could easily exceed $5,000,000 in the aggregate based on the allegations contained in the Complaint. Indeed, as described below, the amount in controversy is, conservatively, **$27,480,297.00.**

27.     **Unpaid Minimum and Overtime Wages**. Plaintiff seeks payment of allegedly unpaid minimum pursuant to California Labor Code §§ 200, 223, 226, 500, 1197, and 1198, as well as allegedly unpaid overtime wages pursuant to California Labor Code §§ 510 and 1194.  (Comp., ¶¶ 41(b)-(c), 49-67, "Prayer for Relief.)   Specifically, Plaintiff alleges in part that AMN has a "policy and/or practice of shaving time off its employees' worked time … which has consistently resulted in underpayments to them, including overtime payments."  (Compl., ¶ 28.) She alleges that she "routinely worked 5 minutes or more per shift than she was paid, resulting in approximately an hour of unpaid overtime to her during her approximately month-and-a-half tenure." (*Id.*)

28.     As set forth above, AMN employed approximately 13,164 non-exempt healthcare professionals that worked approximately 27,802 assignments in California during the four years prior to the filing of the Complaint.  (Larson Decl., ¶ 6.)  Assuming that putative class members were similarly denied one hour of

NOTICE OF REMOVAL

overtime during each assignment due to AMN's alleged time shaving policy, the amount in controversy as to this claim is at least **$1,186,589.36** (27,802 assignments x 1 hour of OT/assignment x $42.68 overtime rate).

29. **Reporting Time Pay**. Plaintiff additionally seeks "reporting time pay" stemming from an alleged practice of requiring employees working assignments for Providence to "report to work by making themselves available so that Providence can establish contact with them by phone and let them to know [sic] that they are being called off work." (Compl., ¶ 19.) She alleges that during the single assignment she worked at a Providence facility, she was "called-off" shortly before the beginning of shift on at least two occasions, but was not provided reporting time pay allegedly owed under the applicable Wage Orders. (*Id*., ¶ 20.) It is vague and ambiguous from the face of the Complaint what amount of "reporting time pay" Plaintiff seeks, or how such pay should be calculated, so in order to provide as conservative of an estimate as possible, AMN assumes for the purposes of this removal that the amount in controversy as to this claim is **$0.**

30. **Unpaid Overtime Wages Stemming from Inaccurate Rate Computation**. Plaintiff further alleges that AMN improperly excluded certain per diem payments, such as lodging and meal and incidental payments, from the regular rate for the purposes of calculating their overtime and doubletime rate of pay. (Compl., ¶¶ 23-25.) It is unclear from the face of the Complaint how to access the potential value of this claim, as there are no allegations pertaining to how such per diem payments should be included in the regular rate under Plaintiff's theory of the case, nor are there allegations regarding the amount of regular, overtime, or doubletime hours worked by Plaintiff or putative class members from which AMN could extrapolate a reasonable value of this claim on a classwide basis. Accordingly, AMN also assumes for the purposes of this removal that the amount in controversy as to this claim is **$0.**

10

NOTICE OF REMOVAL

31. **Meal Period Violations**. Plaintiff further alleges that "AMN has had policy [sic] and/or practice of not authorizing or permitting its employees … to take lawful meal breaks under California law" and that Plaintiff was "routinely not authorized or permitted to take an uninterrupted, off-duty 30-minute break for every five-hour work period." (Compl., ¶ 29.)

32. Claims for meal period violations are subject to the three-year statute of limitations in Code of Civil Procedure § 338(a). *Murphy v. Kenneth Cole Prod.'s, Inc.*, 40 Cal.4th 1094, 1102-14 (2007). However, Plaintiff additionally seeks meal period premium pay pursuant to Business & Professions Code §§ 17200, *et seq.* (*Id*., ¶¶ 76(ii)-81), the statute of limitations on which is four years. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178-79 (Cal. 2000) ("We recognize that any business act or practice that violates the Labor Code through failure to pay wages is, by definition … an unfair business practice … *Any* action on *any* UCL cause of action is subject to the four-year period of limitations created by that section.") (Emphasis in original.) Employees that miss or are otherwise not provided with a compliant, duty-free meal period are entitled to one additional hour of pay at their regular rate of pay for each workday that a meal period is not provided. Cal. Labor Code § 226.7(c).

33. As noted above, Plaintiff alleges that AMN as a matter of "policy and/or practice" does not authorize or permit employees to take lawful meal periods and that she was "routinely" denied compliant meal periods. (Compl., ¶ 29.) For the purposes of this removal, AMN conservatively estimates that each putative class members missed or otherwise received, on average, only one noncompliant meal period per workweek under Plaintiff's theory of the case. As set forth in paragraph 11, *supra*, putative class members worked approximately 399,253 workweeks during the 4 years prior to the filing of the Complaint and received an average straight-time rate of $28.45/hour. Accordingly, the amount

11
NOTICE OF REMOVAL

in controversy as to this claim would be at least **$11,358,747.80** (399,253 workweeks x 1 violation/workweek x $28.45/violation).

34.     **Wage Statements**. Plaintiff seeks statutory penalties for AMN's alleged failure to provide accurate wage statements in violation of Labor Code § 226. (Compl., ¶¶ 75-79.)  While there are no specific allegations as to *how* the wage statements provided by AMN violated § 226, AMN infers from the totality of the allegations in the Complaint that this claim is derivative of Plaintiff's underlying claims for alleged failures to provide reporting time pay, to pay for all hours worked due to time shaving, to properly calculate the overtime rate of pay, and to provide lawful meal periods or premiums in lieu thereof.

35.     Under section 226(e), an injured employee can recover actual damages or statutory penalties of $50 for the initial pay period in which a violation occurs and $100 for each violation in a subsequent period (up to an aggregate penalty of $4,000) for a knowing and intentional violation. Cal. Labor Code § 226(e). The statute of limitations for failure to provide accurate wage statements is one year.  (Cal. Code Civ. Proc. § 340(a).)[3]

36.     As set forth in paragraph 12, supra, 5,338 putative class members received approximately 132,881 wage statements for a corresponding number of pay periods during the year prior to the filing of the Complaint.  Because Plaintiff alleges that putative class members were, as a matter of policy and practice, denied reporting time pay, denied wages due to AMN's alleged time shaving practice, denied wages due to AMN's alleged policy of failing to properly calculate the regular rate for overtime purposes, and denied lawful meal periods, there would necessarily be at least *one* error in each of the wage statements provided by AMN

---

[3] Plaintiff additionally seeks civil penalties under Labor Code § 226.3, which provides for a civil penalty of $250 per employee per initial citation and $1,000 per employee for each subsequent citation.  (Compl., ¶ 79.)  Given, however, that Plaintiff has not alleged a representative claim through which she would be authorized to collect these civil penalties, AMN assumes for the purposes of this removal that the amount in controversy as to this claim is **$0.**

12

NOTICE OF REMOVAL

during this period under Plaintiff's theory of the case.  Without taking into account § 226(e)'s $4,000 maximum on wage statement penalties available to each employee, the amount in controversy as to this claim would be $13,021,200 ((5,338 initial violations x $50) + (127,543 subsequent violations x $100)). However, AMN has determined based on a review of its records that numerous putative class members worked in excess of 40 one-week pay periods during the year prior to the filing of the Complaint, meaning that their statutory damages would cap at $4,000 under the statute.  (Larson Decl., ¶ 8.)  Taking into account this $4,000 maximum, a more accurate estimate as to the amount in controversy for this claim is **$11,710,650.**

37.    **Waiting Time Penalties**. Plaintiff also seeks statutory waiting time penalties pursuant to California Labor Code §§ 201-203 due to AMN's alleged "willful failure to pay all wages due to an employee who is discharged or quits." (Compl., ¶ 73.)    Under section 203, terminated employees who are not paid all wages owed at the time of separation from employment may recover a penalty equal to their daily wage up to a maximum of 30 days.  Cal. Labor. Code § 203(a). The statute of limitations for a claim for waiting time penalties is three years.  Cal. Labor Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal.4th 1389 (2010).

38.    During the three years prior to the filing of the Complaint, approximately 9,927 putative class members ended one or more assignments with AMN in California. (Larson Decl., ¶ 9.)  However, because AMN is a temporary staffing company pursuant to Labor Code § 201.3, it is not liable for waiting time penalties to an employee merely because an employee has completed an assignment.  At this time, AMN is unable to determine the number of putative class members who may have legally separated from employment with AMN during the three years prior to the filing of the Complaint.  Accordingly, AMN assumes for the purposes of this removal that the amount in controversy as to this

13
NOTICE OF REMOVAL

claim is **$0.**[4]

39. **Attorneys' Fees**. Plaintiff further requests attorneys' fees to the extent recoverable by law. (Compl., ¶¶ 54, 61, 66, 74, 77, Prayer for Relief.) When a party seeks to recover attorneys' fees provided for by statute, these fees—including future fees—are included in the amount in controversy to reach CAFA's $5,000,000 minimum. *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("Because the law entitles [plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy [in a removal under CAFA]"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). It is well established in the Ninth Circuit that the benchmark for setting attorneys' fees in the class action context is 25% of the common fund. *See*, *e.g.*, *Vizcaino v. Mircrosoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015), *citing Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001).

40. Labor Code §§ 218.5, 226(e), and 1194.3 authorize the recovery of reasonable attorneys' fees in actions for the recovery of unpaid wages and inaccurate wage statements. Assuming that Plaintiff is able to recover attorneys' fees equal to 25% of the amounts set forth above for her claims for unpaid wages due to alleged time shaving and inaccurate wage statements (and excluding any fees recoverable pursuant to her claims for reporting time pay, inaccurate regular rate computation, meal period premiums, waiting time penalties, or interest), the

---

[4] Note that should Plaintiff take the position that all 9,927 putative class members who have simply completed one or more assignments during the three years prior to the filing of the Complaint are due waiting time penalties, and assuming that all putative class members worked only 8 hours per shift (and as set forth above, most putative class members were contracted to work 12-hour shifts), the amount in controversy as to this claim would be **$67,781,556.00** ($28.45 average straight time rate x 8 hours/day x 30 days x 9,927 putative class members).

NOTICE OF REMOVAL

amount of attorneys' fees in controversy is at least **$3,224,309.84** (($1,186,589.36 unpaid wages + $11,710,650.00 wage statement penalties) x 25%).

41.   **Total Amount in Controversy**.   Assuming that AMN denied each putative class member a single hour of overtime pay during each assignment due to an alleged policy of "time shaving," that putative class members were denied a single legally compliant meal period during each workweek, that all wage statements provided to putative class members during the year prior to the filing of the Complaint incorrectly state the hours worked, overtime rate, meal period premiums due, and/or wages earned, that Plaintiff can recover attorneys' fees equal to 25% of the value of her claims for unpaid wages and wage statement penalties, and *excluding* any potential amount in controversy for Plaintiff's claims for underpaid wages due to alleged failure to provide reporting time pay or to properly calculate the regular rate for overtime purposes, waiting time penalties, interest, costs, and any other duplicative penalties or requests for relief, the amount in controversy in this lawsuit is *at a bare minimum* **$27,480,297.00.**

## VENUE

42.   Venue lies in this Court pursuant to 28 U.S.C. §§ 1441, 1446(a), and 84(c)(2).   This action was originally brought in the Superior Court of the State of California, County of Los Angeles, which is located within the Central District of California. (*See* Kroll-Rosenbaum Decl., Ex. A.)   Therefore, the action is properly removed to this Court because it is the "district and division embracing the place where such action is pending."   28 U.S.C. § 1441(a).

## JOINDER

43.   As of the filing of this Removal, AMN is unaware as to whether co-Defendant Providence has been served.   (Kroll-Rosenbaum Decl., ¶   4.) Regardless, Providence need not join in this Removal, as a single defendant is entitled to remove an entire action under CAFA.   *United Steel Workers. v. Shell Oil Co.*, 549 F.3d 1204, 1208 (9th Cir. 2008) ("Because the case is governed by CAFA

NOTICE OF REMOVAL

and the rule of unanimity is inapplicable, Shell removed the action as a whole, including claims against Tesoro.  Indeed, Tesoro could not have prevented removal even if it wished to do so…")

44.    **WHEREFORE**, AMN requests that the above action pending before the Superior Court of the State of California for the County of Los Angeles be removed to the United States District Court for the Central District of California.

DATED: June 17, 2019

CONSTANGY, BROOKS, SMITH & PROPHETE, LLP


By:/s/ Sarah Kroll-Rosenbaum
Sarah Kroll-Rosenbaum
Matthew Scholl
Nancy Sotomayor
Attorneys for Defendant
AMN Services, LLC

16
NOTICE OF REMOVAL